**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 23-cr-00040 (TNM)** |
| **v.** | : | |
| | : | |
| **BRANDON CAVANAUGH,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Brandon Cavanaugh to 30 days' incarceration, 3 years of probation, 60 hours of community service, and $500 in restitution.

### I.      Introduction

Defendant Brandon Cavanaugh, a 37-year-old former systems engineering intern at NASA's Jet Propulsion Lab, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars in losses.

Defendant Cavanaugh pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G). As explained herein, a sentence of  30 days' incarceration, 3 years of probation, and 60 hours of community service is appropriate in this case because Cavanaugh: (1) went to a sensitive area – the hallway immediately outside of the doors leading to the Senate Floor; (2) took photos and/or videos in multiple areas in the Capitol building, including recording the contents of the security

1

desk outside of the Senate Floor doors; (3) bragged on social media afterwards about rioting in the U.S. Capitol, calling it "epic"; and (4) has yet to sincerely express any remorse for this criminal conduct on January 6.

The Court must also consider that Cavanaugh's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the Capitol Building, and disrupt the proceedings. Here, the facts of and circumstances of Cavanaugh's crime support a sentence of 30 days' incarceration, 3 years of probation, 60 hours of community service, and $500 in restitution in this case.

## II.     Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol.  *See* Statement of Offense, at 1-7.

*Defendant Cavanaugh's Role in the January 6, 2021 Attack on the Capitol*

On October 22, 2021, the FBI identified, on the phone of a different Capitol rioter, a private Telegram chat called "We Who Nose" from "Brandon HB[1] Groyper[2]" used by Brandon Cavanaugh.  On March 7, 2021, "Brandon HB Groyper" wrote, "I honestly want to kill all *igger lovers / Ruthlessly cut their chest open / Rip out their hearts / And eat it."  On July 30, 2021,

---

[1]  "HB" likely refers to Huntington Beach where Cavanaugh lived between 2020 - 2022.

[2]  Groypers believe they are defending against the demographic and cultural changes that are destroying the "true America," a white, Christian nation.  Groypers attempt to normalize their ideology by aligning themselves with "Christianity" and "traditional" values, such as marriage and family.  Groypers identify themselves as American Nationalists who are a part of the "America First" movement.

"Brandon HB Groyper" wrote, "I am done with words I want blood hahah man only in my dreams would I ever get this much satisfaction. Maybe that's why I like it so much."

Based on their further investigation in Cavanaugh, law enforcement learned that he traveled to Washington, D.C. on American Airlines on January 4, 2021 and returned on January 7, 2021. While in Washington D.C., Cavanaugh was inside of the U.S. Capitol on January 6, 2021, between approximately 2:54 p.m. and 3:07 p.m. Capitol surveillance video captured Cavanaugh wearing a black leather jacket, blue plaid shirt, red beanie, and carrying a large blue "AF [America First]" [3]flag.  *See* Figure 1.

---

[3] "Through his nightly 'America First' show and his America First Foundation, [Nick] Fuentes has stated his aim is to remake the Republican Party into 'a truly reactionary party.' In livestreams and public appearances, Fuentes has described his goal as working within the political system to become 'the right-wing flank of the Republican Party.' He sees America's 'white demographic core' as central to its identity." https://www.splcenter.org/fighting-hate/extremist-files/individual/nick-fuentes, visited March 23, 2023.



Figure 1

Cavanaugh entered the West Stairs Door on the first floor at approximately 2:54 p.m., holding what appeared to be a cellular phone. Cavanaugh paused to record or photograph before proceeding up the hallway and out of view.  *See* Figure 2.



Figure 2

Cavanaugh climbed the stairs with a group of individuals and entered a sensitive area – the hallway immediately outside of the doors ("Senate Floor Doors") leading to the Senate Floor.  *See* Figure 3.  These were the same doors that Vice President Pence had been evacuated from at around 2:11 p.m.  *See* Figure 4.  While Cavanaugh was outside of the Senate Floor Doors, he appeared to record the contents of the security guard desk just outside those doors, before he moved to the camera's left and out of view.



Figure 3



Figure 4

After recording the contents of the security guard desk just outside the Senate Floor Doors, at approximately 3:04 p.m., Cavanaugh turned a corner from an opposing archway, then went

down the stairs to the first floor before leaving out of view.  Cavanaugh proceeded to turn the corner from the camera  and walked down the hallway with a group of individuals.  *See* Figure 5. Cavanaugh then walked out of camera view where he exited the Capitol building at approximately 3:07 p.m.



Figure 5

*Social Media Posts*

Cavanaugh used his DLive account called the "thehandofgod" to post about the events of that day.  On the morning of January 6, 2021, the DLive account "thehandofgod" wrote, "HB local in DC right now!!" and "Wish you could make it we need to be out in force."  The following day,

on January 7, 2021, he wrote, "Hey HB groyper here I just got back from the capitol!! I got inside!!" then "was epic" on the CultureWarCriminal DLive channel."

*The Charges and Plea Agreement*

On August 16, 2022, the United States charged Cavanaugh by criminal complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On August 25, 2022, law enforcement officers arrested Cavanaugh in his residence in Los Angeles, California. On February 23, 2023, United States charged Cavanaugh by a one-count Information with violating 40 U.S.C. § 5104(e)(2)(G).

On April 7, 2023, Cavanaugh will plead guilty pursuant to a plea agreement to Count One of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G).   By plea agreement, Cavanaugh agreed to pay $500 in restitution to the Architect of the Capitol.

## III.    Statutory Penalties

Subsequent to his plea in this case, Cavanaugh will face sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement, Cavanaugh faces up to six months of imprisonment and a fine of up to $5,000.  Cavanaugh must also pay restitution under the terms of his or her plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

## IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 30 days' incarceration, 3 years of probation, 60 hours of community service, and $500 in restitution.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed a grave danger to our democracy."
*United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds
of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while
staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States
v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021).  While assessing Cavanaugh's
participation in that attack to fashion a just sentence, this Court should consider various
aggravating and mitigating factors.  Notably, for a misdemeanor defendant like Cavanaugh, the
absence of violent or destructive acts is not a mitigating factor.  Had Cavanaugh engaged in such
conduct, he or she would have faced additional criminal charges.

One of the most important factors in Cavanaugh's case are the social media posts
demonstrating that Cavanaugh had no remorse for his action, although he contributed to the chaotic
and unsafe conditions at the Capitol that day.  Although Cavanaugh spent only approximately 13
minutes in the Capitol building, he went further into the building than many other rioters, making
it as far as the hallway immediately outside of the Senate Floor Doors, from which Vice President
Pence had been evacuated.  In addition, Cavanaugh took photos and/or videos in multiple areas in
the Capitol building, including recording the contents of the security desk outside of the Senate
Floor Doors.  Cavanaugh also walked throughout the building during a particularly tumultuous
time when police resources were stretched thin, as, according to the United States Capitol Police,
the Senate Chamber had been breached at approximately 2:50 p.m., only **12** minutes before
Cavanaugh was immediately outside of Senate Floor Doors, as shown in Figure 3 above.  (The
Senate Chamber had been breached through other doors.)  Rather than express remorse or concern,
Cavanaugh created a social media posts after the riots calling the events of the day and his

9

participation in them "Epic."   As of the date of this memo, Cavanaugh has yet to sincerely express any remorse for his criminal conduct on January 6.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of 30 days' incarceration, 3 years of probation, and 60 hours of community service in this matter.

**B.  The History and Characteristics of Cavanaugh**

Cavanaugh's criminal history includes violence and a weapons charge, for which he has received minor or no criminal punishment.  Specifically, Cavanaugh's criminal history consists of an August 2010 misdemeanor conviction for manufacturing/possession of a dangerous weapon for which he received 26 days' incarceration.  He also was convicted for fighting/challenging to fight in a public place in June of 2013 for which he received 3 months' probation.  Additionally of note, there were reports of potential violent text message  threats to his ex-girlfriend and vandalism to her vehicle during his time on pretrial release that were reported to Pretrial Services.  Accordingly, Cavanaugh's history and characteristics weigh in favor of some jail time.

**C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law**

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

**D.  The Need for the Sentence to Afford Adequate Deterrence**

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President.

The gravity of these offenses demands deterrence. *See United States v. Mariposa Castro*, 1:21-cr-00299 (RBW), Tr. 2/23/2022 at 41-42 ("But the concern I have is what message did you send to others? Because unfortunately there are a lot of people out here who have the same mindset that existed on January 6th that caused those events to occur. And if people start to get the impression that you can do what happened on January 6th, you can associate yourself with that behavior and that there's no real consequence, then people will say why not do it again."). This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the

democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The Government's recommended sentence should also discourage Cavanaugh from engaging in such activity in the future. Furthermore, given Cavanaugh's call for others to riot in and at the Capitol as well as statements on social media after January 6, 2021, describing the terrible events on January 6 "epic," the Government seeks a sentence that would demonstrate that his actions were criminal and not worthy of praise or pride. Combined with his history of weapons and violence, it is even more important that he be deterred and supervised.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[4] This Court must sentence Cavanaugh based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Cavanaugh has pleaded guilty to Count One of the Information, charging him with Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing

---

[4] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

Guidelines do not apply, U.S.S.G. § 1B1.9.  The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A.  § 3553(a)(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 3553(a)(6) does not limit the sentencing court's broad discretion under 18 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Although unwarranted disparities may "result when the court relies on things like alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants whose differences arise from "legitimate considerations" such as a "difference[] in types of charges" is not unwarranted.  *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020).

"Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006). "[A] defendant cannot rely upon § 3553(a)(6) to seek a reduced sentence designed to lessen disparity between co-defendants' sentences." Consequently, Section 3553(a)(6) neither prohibits nor requires a sentencing court "to consider sentencing disparity among codefendants." *Id.* Plainly, if Section 3553(a)(6) is not intended to establish sentencing uniformity among codefendants, it cannot require uniformity among all Capitol siege defendants charged with petty offenses, as they share fewer similarities in their offense conduct than codefendants do. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Tr. at 48-49 ("With regard to the need to avoid sentence disparity, I find that this is a factor, although I have found in

13

the past and I find here that the crimes that occurred on January 6 are so unusual and unprecedented that it is very difficult to find a proper basis for disparity.") (statement of Judge Chutkan)

Cases involving convictions only for Class B misdemeanors (petty offenses) are not subject to the Sentencing Guidelines, so the Section 3553(a) factors take on greater prominence in those cases. Sentencing judges and parties have tended to rely on other Capitol siege petty offense cases as the closest "comparators" when assessing unwarranted disparity. But nothing in Section 3553(a)(6) requires a court to mechanically conform a sentence to those imposed in previous cases, even those involving similar criminal conduct and defendant's records. After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095. It follows that a sentencing court in a Capitol siege petty offense case is not constrained by sentences previously imposed in other such cases. *See United States v. Stotts*, D.D.C. 21-cr-272 (TJK), Nov. 9, 2021 Sent. Hrg. Tr. at 33-34 ("I certainly have studied closely, to say the least, the sentencings that have been handed out by my colleagues. And as your attorney has pointed out,

you know, maybe, perhaps not surprisingly, judges have taken different approaches to folks that are roughly in your shoes.") (statement of Judge Kelly).

Additionally, logic dictates that whether a sentence creates a disparity that is unwarranted is largely a function of the degree of the disparity. Differences in sentences measured in a few months are less likely to cause an unwarranted disparity than differences measured in years. For that reason, a permissible sentence imposed for a petty offense is unlikely to cause an unwarranted disparity given the narrow range of permissible sentences. The statutory range of for a petty offense is zero to six months. Given that narrow range, a sentence of six months, at the top of the statutory range, will not create an unwarranted disparity with a sentence of probation only, at the bottom. *See United States v. Servisto*, D.D.C. 21-cr-320 (ABJ), Dec. 15, 2021 Sent. Hrg. Tr. at 23-24 ("The government is trying to ensure that the sentences reflect where the defendant falls on the spectrum of individuals arrested in connection with this offense. And that's largely been accomplished already by offering a misdemeanor plea, which reduces your exposure substantially.") (statement of Judge Berman Jackson); *United States v. Dresch*, D.D.C. 21-cr-71 (ABJ), Aug. 4, 2021 Sent. Hrg. Tr. at 34 ("Ensuring that the sentence fairly reflects where this individual defendant falls on the spectrum of individuals arrested in connection with the offense has largely been accomplished by the offer of the misdemeanor plea because it reduces his exposure substantially and appropriately.") (statement of Judge Berman Jackson); *United States v. Peterson*, D.D.C. 21-cr-309, Sent. Hrg. Tr. at 26 (statement of Judge Berman Jackson) (similar).

While no case contains the same balance of aggravating and mitigating factors present here, the Government's recommendation is consistent with sentences handed down in other January 6 cases with similar facts. In particular, the Government has often recommended, and judges have often imposed, periods of incarceration for cases in which the defendants went into sensitive

hallways and corridors (those immediately outside of particularly sensitive spaces like the Senate Floor) and showed a lack of remorse.

In *United States v. Jeremey Baouche*, 1:21-CR-00733, defendant Baouche was also convicted of 18 U.S.C. § 5104(e)(2)(G).  Similar to Cavanaugh, he remained in the Capitol building for a limited period of time (about 17 minutes), went to a sensitive area of the building (a hallway near the Senate Wing), and showed no remorse for his actions.  Distinct from the instant case, Baouche also used a megaphone to chant with and encourage the crowd.  However, Baouche (unlike Cavanaugh) did not post to social media encouraging others to join the riot, and did not take video and photographs throughout the Capitol building, including sensitive areas.  Judge Cooper sentenced Baouche to 30 days' jail time and 24 months' probation.

In *United States v. Jeremiah Caplinger*, 1:21-CR-00342, defendant Caplinger was also convicted of 18 U.S.C. § 5104(e)(2)(G).  Similar to Cavanaugh, he remained in the Capitol building for a limited period of time (about 32 minutes), went to sensitive areas of the building (the hallway of Speaker Pelosi's office suites and a corridor on the third floor outside the Senate Floor), and showed a lack of remorse for his actions.  Distinct from the instant case, Caplinger also wore body armor and scaled a wall before entering the Capitol building and, during his interview with the FBI,[5] omitted information and repeatedly downplayed his actions.[6]  However, Caplinger (unlike Cavanaugh) did not record the contents of a security desk outside the Senate Floor Doors. Judge Friedman gave Caplinger 35 days' jail time and 24 months' probation.

---

[5] Cavanaugh has not yet had his interview with the FBI.
[6] Caplinger also used marijuana in violation of his terms of pretrial release.  In the instant case, no Presentence Report has been ordered, which would reveal whether Cavanaugh has been in full compliance with his pretrial release.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

In crafting its recommendation, the Government took into consideration not only Cavanaugh's crimes and rhetoric on social media but also his limited criminal history and relatively quick resolution of this matter.[7]

---

[7] Numerous judges of this Court, including Your Honor, *see United States v. Ferreira*, 21-cr-210 (TSC), have concluded that a sentencing court in a case involving a violation of a Class B misdemeanor under 40 U.S.C. § 5104 may impose a "split sentence" – a period of incarceration followed by a period of probation – for defendants convicted of federal petty offenses. *See, e.g.,* 18 U.S.C. § 3561(a)(3); *see, e.g., United States v. Little*, 21-cr-315 (RCL), 2022 WL 768685, at *1 (D.D.C. Mar. 14, 2022) (concluding that "a split sentence is permissible under law and warranted by the circumstances of this case"); *see generally Appellee's Brief for the United States, United States v. Little*, No. 22-3018 (D.C.) (filed Aug. 29, 2022). Approximately nine judges of this district have authorized and imposed such split sentences pursuant to law. *But see United States v. Panayiotou*, No. 22-CR-55 (DLF), 2023 WL 417953 (D.D.C. Jan. 25, 2023) (holding that such sentences are impermissible under Section 3561(a)(3)).

In the alternative, courts have also issued sentences under 18 U.S.C. § 3563(b)(1), which authorize limited periods of intermittent confinement as a condition of probation. The courts have consistently found that such a sentence is permissible for up to two weeks' imprisonment served in one continuous term. *See, e.g., United States v. Mize*, No. 97-40059, 1998 WL 160862, at *2 (D. Kan. Mar. 18, 1998) (quoting Section 3563(b)(10)'s legislative history in interpreting the term

**V.       Conclusion**

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 30 days' incarceration, 3 years of probation, 60 hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

<div style="margin-left: 40%">

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     s/ *Joseph Huynh*
        Assistant United States Attorney
        D.C. Bar No. 495403
        Assistant United States Attorney (Detailed)
        405 East 8th Avenue, Suite 2400
        Eugene, Oregon 97401-2708
        Telephone: (541) 465-6771
        Joseph.Huynh@usdoj.gov

</div>

---

to mean a "brief period of confinement, e.g., for a week or two, during a work or school vacation," described above and reversing magistrate's sentence that included 30-day period of confinement as a period condition of probation). To this end, at least four of the judges of this Court have imposed sentences under §3563(b)(10). Indeed, a sentencing court may also impose multiple intervals of imprisonment under §3563(b)(1). *See United States v. Anderson*, 787 F. Supp. 537, 539 (D. Md. 1992). ; *Panayiotou*, 2023 WL 417953, at *9 ("in a case in which the government exercises its prosecutorial discretion to allow a defendant to enter a plea to a single petty misdemeanor, it can request that a court impose a sentence of intermittent confinement as a condition of probation.") (citing 18 U.S.C. § 3563(b)).

       In this district, at least two judges have similarly imposed multiple terms of imprisonment, to be served intermittently, consistent with this subsection. Such sentences are particularly appealing in light of the fact that it has been nearly three years since the World Health Organization first declared the COVID-19 outbreak a global pandemic in March 2020, and over two years since the first COVID-19 vaccine was administered in the United States in December 2020, allowing detention facilities to now more safely handle the logistical and practical concerns associated with multiple stints of imprisonment.

## **CERTIFICATE OF SERVICE**

On this 27 day of March 2023, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

<div align="right">

 /s/ *Joseph Huynh*
Assistant United States Attorney
D.C. Bar No. 495403
Assistant United States Attorney (Detailed)
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401-2708
Telephone: (541) 465-6771
Joseph.Huynh@usdoj.gov

</div>